IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SNORKEL INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 08-2270-CM-DJW |
| ) | |
| UNIVERSAL EQUIPMENT, INC., ) | |
| an Illinois corporation, and ALASTAIR ) | |
| ROBERTSON, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**RESPONSE TO DEFENDANTS' MOTION FOR SEPARATE TRIAL
AND MOTION FOR PROTECTIVE ORDER**

Plaintiff Snorkel International, Inc. ("Snorkel" or "Plaintiff") files this Response to Defendants' Motion for Separate Trial and Motion for Protective Order.

**BACKGROUND**

This is a simple collections matter arising from a number of transactions between Snorkel and Defendants Universal Equipment ("Universal") and Alastair Robertson ("Robertson") (collectively "Defendants"). Universal – a "wholesaler" of aerial lift equipment – offered to purchase aerial lifts and related products from Snorkel pursuant to various purchase orders and replacement part orders. Snorkel accepted and fulfilled these orders, and Universal refused to pay.

On June 11, 2008, Snorkel filed its initial Complaint against Universal, alleging breach of contract, violations of the Kansas Uniform Commercial Code, and quantum meruit. After conducting initial discovery, including the deposition of Universal's President and sole shareholder, Robertson, on April 11, 2009, Snorkel obtained evidence that Robertson was and is the alter ego of Universal. Based on the information that it obtained, Snorkel moved to amend

the Complaint to add Robertson as an additional party in May of 2009, and the Court granted the same. (Docs. 45 and 66). Although the claims against Robertson were subsequently dismissed without prejudice, Robertson has been properly served with the Second Amended Complaint.

Since the inception of this case nearly two years ago, Defendants have continually stonewalled Snorkel's attempts to obtain financial information to support its veil-piercing claim against Robertson. These tactics continue, as Defendants rather presumptuously ask the Court to decide now whether there should be one trial or two, when that issue is one the Court can more appropriately and fully consider later. Why should the Court be required to decide it now? Plaintiff respectfully submits that the Court should not countenance Defendants' use of a separate trial motion now as a vehicle for further delaying the discovery process – a tactic which, Plaintiff respectfully submits, is only serving to impede a possible resolution of this matter.

## ARGUMENT AND AUTHORITIES

The Federal Rules provide that a court may order separate trials of one or more separate issues "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "The decision to bifurcate turns on the facts of each case and rests within the sound discretion of the trial court." *Green Construction Company v. Kansas City Power and Light Company*, No. 87-2070-S, 1990 WL 256315 at *1 (D. Kan. Oct. 26, 1990) (citing *Gonzalez-Martin v. Equitable Life Assur. Soc.*, 845 F.2d 1140, 1145 (1st Cir. 1988)); *see also* 9A Charles Alan Wright & Arthur Miller, *Federal Practice and Procedures* § 2388 (3d ed. 2008) ("The district judge must weigh a variety of facts, such as whether one trial or separate trials best will serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay."). Although it is within the trial court's sound discretion to bifurcate issues, the moving party "has the burden of showing that separate trials are proper in light of the general principle

that a single trial tends to lessen the delay, expense and inconvenience." *Belisle v. BNSF Ry. Co.*, -- F. Supp. --, 2010 WL 898199 at *13 (D. Kan. Mar. 9, 2010) (citation omitted).

### A. Separate discovery and trials would not promote judicial economy.

Defendants' main argument for bifurcating the veil-piercing claim against Robertson from the underlying claims is based on the notion of judicial economy. According to Defendants, any claim against Robertson is irrelevant if Universal is not liable for the underlying breach of contract, quantum meruit, and UCC claims. However, a number of courts, including the District of Kansas, have rejected similar judicial economy arguments in cases involving alter ego claims. *See, e.g., Green Construction*, 1990 WL 256315 at *1 (denying a motion to bifurcate an alter-ego claim from underlying claims because "convenience, expedition and economy favor a single trial" and "a single trial is most likely to result in a just final disposition of this litigation.").

In *Worldcom Technologies, Inc. v. Intelnet Int'l, Inc.*, No. CIV. A. 00-2284, 2002 WL 1971256 (E.D. Pa. Aug. 22, 2002), for example, the plaintiffs initially filed suit against two corporations alleging breach of contract, quantum meruit, unjust enrichment, fraud, and negligent and intentional misrepresentation. *Id*. at *1. The plaintiffs subsequently amended their complaint to allege claims against an individual officer, director and sole shareholder of one of the corporate defendants and against the officer and director of the other corporate defendant based on an alter-ego theory. *Id*. The defendants moved to stay discovery and to bifurcate the alter ego claims from the other claims. *Id*. at *6-7. The defendants' principal argument was that discovery and other matters related to the alter ego claim would only become relevant if the plaintiffs prevailed on the merits of the underlying claims against the corporate defendants. The court, however, disagreed reasoning that:

3

> Delaying discovery on the alter ego issues will only further compound the delays and expense already incurred in this case, filed over two years ago. The [defendant's] proposed scheme will result in two stages of discovery and two trials, which is both inefficient and unnecessary. . . . Finally, further delay creates the risk of prejudice to plaintiffs in the form of lost evidence, fading memories, and potentially dissipating assets to pay any judgment that plaintiffs might secure.

*Id.* at *6.

Likewise, in *I-Systems, Inc. v. Softwares, Inc.*, No. Civ. 02-1951 JRTFLN, 2004 WL 742082 at *18 (D. Minn. Mar. 29, 2004), the court rejected the corporate defendants' judicial economy argument where one defendant company was the sole shareholder of another defendant company and both defendants moved to bifurcate the alter ego claim from the underlying claims. In denying the motion to bifurcate the court reasoned:

> [A]ll defendants are controlled and managed by the same small group of people. These people will undoubtedly be called as witnesses regarding the substantive claims and, because of their involvement in all companies, the alter ego claim. Maintaining all of the claims in one action allows these people to testify once rather than twice. Even if they spend slightly longer testifying about the substantive claims and the alter ego claim, hearing from each person once seems more efficient and practical than possibly hearing from each witness twice in two separate proceedings.

*Id.*

In this matter, separate discovery and trials would be inefficient, unnecessary, and simply would not promote judicial economy as Defendants suggest.[1]   This case was filed almost two

---

[1] Defendants' argument for bifurcation relies primarily on *Mandville v. Quinstar Corp.*, 109 Fed. App'x 191 (10th Cir. 2004). *Quinstar*, however, is distinguishable from the present matter and is of questionable precedential value. There, a former employee sued Quinstar and its sole shareholder for breach of contract and violations of Title VII and ERISA. *Id.* at 193. The trial court granted summary judgment to the sole shareholder on all claims but curiously determined that a bifurcation proceeding would be scheduled to determine the propriety of the veil-piercing claim should judgment be obtained against Quinstar. *Id.* In a separate trial, the court pierced Quinstar's corporate veil despite the sole shareholder's previous dismissal from the case. *Id.* at 194. Quinstar appealed claiming that bifurcation resulted in prejudice and did not promote judicial economy. *Id.* On appeal, the Tenth Circuit held that it was not an abuse of discretion to bifurcate the alter ego claim from the underlying claims. *Id.* In dissent, however, Judge Kelly reasoned that the district court had no jurisdiction to conduct a separate trial on the veil piercing claim when the sole shareholder was no longer a party to the case. *Id.* at 200. Because courts do not have the authority to render advisory opinions, he would have remanded the case to the district court with instructions to vacate the judgment as it pertained to veil-piercing. *Id.*

years ago, and discovery has been ongoing for nearly 18 months. Despite Defendants' various efforts to block the discovery of Universal's financial records, Snorkel has already uncovered information suggesting that Universal is merely Robertson's alter ego, including financial documents demonstrating Universal's financial troubles and distributions to its sole shareholder, Robertson, while the company was insolvent. (See Doc. 54.1; Doc. 121, at ¶¶ 16-19) These financial records, in combination with the 2008 tax documents, indicate that Universal was insolvent when Defendants entered the relevant transactions with Snorkel. Further delaying discovery on the veil-piercing claims would only compound the delays and expenses in this matter.

Moreover, to suggest that Robertson has "considerable catching-up to do if the veil-piercing claim is not bifurcated" is patently disingenuous. Robertson is the sole shareholder, founder, and President of Universal. He has been intimately familiar with this case since its inception in July of 2008. Indeed, his deposition was taken over 14 months ago. Although he was not served with the latest version of the Amended Complaint until April 19, 2010, Snorkel's former counsel originally moved to add him as a party in May of 2009. (Doc. 45) He has certainly been aware of the veil-piercing allegations and the basis for these allegations for the better part of a year.

More importantly, Snorkel's veil-piercing claim against Robertson is interrelated to the discovery and proof of the underlying claim. The primary question in determining whether the claims are interrelated is not whether the elements of the claim are the same as Defendants have suggested but "'whether the issues would involve many of the same witnesses and documentary evidence.'" *See Interstate Restoration Group, Inc. v. Al Copeland Investments*, No. 07-0970, 2009 WL 1870787 at *4 (E.D. La. June 25, 2009) (quoting *Laitram Corp. v. Hewlett-Packard*

*Co.*, 791 F. Supp. 113, 115 (E.D. La. 1992)). To that end, Robertson will be the material witness at trial in this matter. His testimony and his financial records will be important to both the substantive claims and, because of his involvement as the sole shareholder and President of Universal, the alter ego claim. For example, Robertson's personal financial records may reveal that he personally received some of the money that Universal alleges its Japanese representative, Mr. Yamashita, received from the end users but then pocketed for himself. Other witnesses, such as Robertson's son Glenn Robertson, will also be able to testify to both substantive claims and alter ego claims. As the court in *I-Systems* suggested, hearing from witnesses in one action makes more sense than the possibility of hearing from the same persons twice in separate actions. *I-Systems*, 2004 WL 742082 at *18. Completing discovery and obtaining testimony regarding the elements of veil-piercing is certainly not as time-consuming as a wholly separate trial and an additional round of discovery would be. *See, e.g., Green Construction*, 1990 WL 256315 at *1 (holding that "convenience, expedition and economy favor a single trial" in a veil-piercing case).

    **B. The resulting prejudice from delaying discovery and trial on Snorkel's veil-piercing claim outweighs any perceived prejudice to Defendant.**

Courts have long recognized that "'[p]rejudice is the most important consideration in deciding whether to order separate trials under Rule 42(b).'" *Interstate Restoration Group*, 2009 WL 1870787 at *2 (quoting *Laitram*, 791 F. Supp. at 115); *Green Construction*, 1990 WL 256315 at *1 (holding that "a single trial is most likely to result in a just final disposition of this litigation"); *see also Federal Practice and Procedures* § 2388 ("The major consideration, of course, must be which procedure is more likely to result in a just and expeditious final disposition of the litigation."). This holds particularly true when a defendant attempts to bifurcate alter ego claims from underlying claims.

6

In *Interstate Restoration Group*, for example, the plaintiff filed suit against several defendant corporations for breach of contract only to later amend the complaint to add the defendant corporations' owner under an alter-ego theory. *Id*. at *1. The defendants argued that bifurcating the claims would promote fairness and judicial economy because the alter ego issue would be moot unless any of the corporate defendants were held liable and would be unable to satisfy judgment. *Id*. The defendants further argued that they would be prejudiced by jury confusion concerning liability and alter ego issues. *Id*. at *4. Conversely, the plaintiff argued that bifurcating the claims would prejudice the plaintiff by considerably delaying the outcome and increasing the costs to all litigants. *Id*. The court addressed the respective prejudice to the parties and ultimately held:

> On balance, this Court concludes that bifurcating the liability and business organization issues would be inappropriate in this case. Given the age of this case, this Court concludes that bifurcation of the claims would most likely prejudice the nonmoving party, Interstate, by unnecessarily delaying the final resolution. Moreover, further delay increases the chance that fading memories and lost evidence will prejudice Interstate. The Defendants' argument that litigation of the alter ego claim may not be necessary does not outweigh the harm that Interstate would suffer if bifurcation were ordered. Also, any danger of juror confusion can be remedied through limiting instructions. Therefore, Defendants' motion to bifurcate shall be denied.

*Id*. at *5.

Here, the prejudice to Snorkel far outweighs any potential prejudice to Defendants. Defendants' only argument for prejudice is that evidence on the veil-piercing claim against Robertson may skew the jury's view of Universal's liability. But any potential prejudice to Defendants can be easily remedied through a limiting instruction to the jury. *See I-Systems*, 2004 WL 742082 at *18). On the other hand, this simple collections matter has been on-going for nearly two years, both parties have already incurred substantial fees and costs, and further delay will unnecessarily increase these fees and costs. The longer resolution of this matter is

delayed, Universal and Robertson, parties who have represented they do not have the assets to satisfy judgment, will have further opportunity to dissipate assets, likely in the form of attorney's fees. *See Worldcom Technologies*, 2002 WL 1971256 at *6. (noting that "further delay creates the risk of prejudice to plaintiffs in the form of lost evidence, fading memories, and potentially dissipating assets to pay any judgment that plaintiffs might secure."). Therefore, Snorkel respectfully asks that the Court deny Defendant's motion to bifurcate.

### C. Defendants have not established good cause for entry of a protective order.

The decision "[w]hether to enter a protective order is within the sound discretion of the court." *Barnwell v. Correction Corporation of America*, No. 08-CV-2151-JWL-DJW, 2008 WL 4809887 at *2 (D. Kan. Oct. 31, 2008) (citing *Thomas v. IBM*, 48 F.3d 478, 482 (10th Cir. 1995)). The federal rules provide, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Rule 26(c)(2). To that end, the party seeking a protective order must demonstrate that good cause exists through "'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Barnwell*, 2008 WL 4809887 at *2 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)). Defendants have not established good cause why a protective order should be entered.

Defendants seek an order staying Robertson's initial disclosures and any other discovery regarding the veil-piercing claims against Robertson on the basis that this information is unnecessary to the underlying claims against Universal. Again, such arguments have been squarely rejected by courts in denying motions to stay discovery of veil-piercing claims. *See, e.g., Worldcom Technologies*, 2002 WL 1971256 at *6 (denying the defendants' motion to stay discovery on alter ego issues). Because Defendants have not carried their burden for

8

demonstrating separate discovery and trials would be appropriate in this matter, staying discovery on issues involving Robertson individually is unwarranted. Thus, Defendants' motion for protective order staying discovery should be denied.

### D. The Court may deny the motion to bifurcate without prejudice.

The federal rules vest the Court with wide discretion in determining not only whether the bifurcation of issues is warranted, but also when it is warranted. *See* Fed. R. Civ. P. 26; Fed R. Civ. P. 42(b). Accordingly, the Court may "deny the party's motion without prejudice so that if future developments reveal the efficacy of separate trials, the court may revisit the issue." *Federal Practice and Procedures* § 2388. Defendants seek a separate trial on the veil-piercing claim as a means of avoiding discovery of Robertson's and Universal's financial documents. At the very least, however, Snorkel should be permitted discovery limited to the veil-piercing claim against Robertson to avoid any resulting prejudice from delaying discovery. Should Defendants later still believe it necessary to conduct separate trials on the veil-piercing claim and the underlying claims, a denial of their motion without prejudice now will allow the Court to revisit the bifurcation issue at a later date.

### CONCLUSION

Defendants have not carried their burden to demonstrate that separate trials are warranted in this simple collections matter, especially at what is an early stage of the case in terms of Mr. Alastair Robertson's involvement as an individual defendant. Bifurcating the veil-piercing claim from the underlying claims now would cause unnecessary delay to the final resolution of this case and, ultimately, would prejudice Snorkel. If a genuine need or basis for separate trials develops later, it can be addressed then; the Court need not decide it now. Therefore, Plaintiff

Snorkel International, Inc. respectfully requests that the Court enter an order denying without prejudice Defendants' Motion for Separate Trial and denying with prejudice the Motion for Protective Order so that discovery relating to Mr. Robertson's finances and Plaintiff's veil-piercing claim can proceed.

Respectfully submitted by:

FOULSTON SIEFKIN LLP

*/s Scott C. Nehrbass*
Scott C. Nehrbass, KS #16285
Matthew D. Stromberg, KS #23710
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS  66210-2017
snehrbass@foulston.com
mstromberg@foulston.com
(913) 498-2100
(913) 498-2101 FAX

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on this day of **May 26**, **2010**, I electronically filed the above and foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

ROBERTS AND ASSOCIATES, P.C.

Robert S. Marcott, IL #6205382
104 E. Roosevelt Rd., Suite 202
Wheaton, IL 60187
(630) 668-4211 Telephone
(630) 668-2076 Facsimile
Bobmarcott@roberts-law.com

And

BROWN & RUPRECHT PC

Frank Wendt, KS #13924

10

911 Main Street, Suite 2300
Kansas City, MO 64105
(816) 292-7000 Telephone
(816) 292 7050 Facsimile
fwendt@brlawkc.com

ATTORNEYS FOR DEFENDANT

*/s/Scott C. Nehrbass*